1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANFRED SHOCKNER,

        Plaintiff,

   v.

DR. SOLTANIAN, et al.,

        Defendants.

No.  2: 18-cv-1948 TLN KJN P

ORDER AND FINDINGS AND
RECOMMENDATIONS

I.     Introduction

     Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

to 42 U.S.C. § 1983.  Pending before the court are motions to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) filed by defendant Soltanian-Zadeh[1] (ECF No. 79) and defendants

Vaughn and Smith (ECF No. 80).  Also pending is plaintiff's motion for summary judgment.

(ECF No. 87.)

     For the reasons stated herein, the undersigned recommends that defendants' motions to

dismiss and plaintiff's summary judgment motion be denied.  The undersigned also herein denies

plaintiff's motion for subpoenas (ECF No. 78) and grants defendant Soltanian-Zadeh's motion to

---

[1] Plaintiff refers to defendant Soltanian-Zadeh as defendant Soltanian.  However, defendant's
motion to dismiss identifies this defendant as defendant Soltanian-Zadeh.  (ECF No. 79.)
Accordingly, these findings and recommendations refer to this defendant as defendant Soltanian-
Zadeh.

1

1  strike (ECF No. 96.)

2    II.    Legal Standard for 12(b)(6) Motion

3       A complaint may be dismissed for "failure to state a claim upon which relief may be

4  granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a

5  plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." Bell

6  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the

7  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

8  defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

9  (citing Twombly, 550 U.S. at 556).  The plausibility standard is not akin to a "probability

10 requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully.

11 Iqbal, 556 U.S. at 678.

12      Dismissal under Rule 12(b)(6) may be based on either:  (1) lack of a cognizable legal

13 theory; or (2) insufficient facts under a cognizable legal theory.  Chubb Custom Ins. Co. v. Space

14 Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013).  Dismissal also is appropriate if the complaint

15 alleges a fact that necessarily defeats the claim.  Franklin v. Murphy, 745 F.2d 1221, 1228-1229

16 (9th Cir. 1984).

17      Pro se pleadings are held to a less-stringent standard than those drafted by lawyers.

18 Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  However, the court need not accept as

19 true unreasonable inferences or conclusory legal allegations cast in the form of factual

20 allegations.  See Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (citing Western Mining

21 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)).

22      In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

23 consider only allegations contained in the pleadings, exhibits attached to the complaint, and

24 matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

25 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

26 consider a memorandum in opposition to a defendant's motion to dismiss to determine the

27 propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

28 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

2

1   whether to grant leave to amend.  See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

2   2003).

3      III.    Plaintiff's Claims

4          This action proceeds on plaintiff's second amended complaint filed December 26, 2018,

5   against defendants Dr. Soltanian-Zadeh, Dr. Smith and Dr. Vaughn.  (ECF No. 17.)  Defendants

6   are employed at Mule Creek State Prison ("MCSP").

7          Plaintiff alleges that he is 77 years old and suffers from several medical conditions, some

8   of which cause him to suffer severe pain.  (Id. at 2-3.)  Plaintiff describes these conditions as

9   1) leukocytosis, probably pseudomembranous colitis; 2) left femoral vein deep venous

10   thrombosis; 3) status post right total hip replacement; 4) severe tricompartmental degenerative

11   knee disease; 5) hypertension; 6) chronic obstructive pulmonary disease; 7) history of ulcerative

12   colitis; 8) C.O.P.D.; and 9) left knee has complex medial and lateral meniscal tear, full thickness

13   tear of ACL and partial tear of collateral ligament and mild effusion with synovitis.  (Id. at 2-3.)

14          Plaintiff alleges that Dr. Ahmed at Mercy Hospital noted that plaintiff's mesalamine dose

15   was somehow reduced from 1200 mg to 400 mg. (Id. at 3.)  Dr. Ahmed restarted plaintiff at 1200

16   mg. 3 times per day.  (Id.)  Plaintiff's pain medication was 12.5 mg. of methadone and Tylenol #

17   3.  (Id.)

18          Plaintiff alleges that because of his extreme conditions, he was put on the Disability

19   Placement Program ("DPP") for mobility impaired inmates.  (Id.) Plaintiff alleges that he had the

20   following comprehensive accommodation chronos:  ground floor housing, bottom bunk housing,

21   wrist splints, a single point cane, a mobility impaired garment, an extra mattress, extra pillow,

22   physical limitations to job assignments based on terrain level, no climbing and no lifting greater

23   than 20 pounds, an accommodation noting it was difficult for plaintiff to get down on the ground

24   for code responses, and plaintiff must wear mobility vest and carry his chrono.  (Id.)

25   ////

26   ////

27   ////

28   ////

3

Plaintiff alleges that his severe pain has been constant and alleviated by specific medications prescribed at previous prisons.  (Id.)  Plaintiff alleges that upon arriving at MCSP, plaintiff's pain medications were stopped.  (Id.)  Plaintiff alleges that his physical conditions that caused the pain did not stop, so his pain still existed.  (Id.)  Plaintiff alleges that defendant Soltanian-Zadeh made the decision to discontinue his previously prescribed pain medication, i.e., methadone.  (Id.)  Plaintiff alleges that defendant Soltanian-Zadeh denied his pain medication, stating, "CDCR is not responsible to treat you for anything except to allow you to eat, shit and take care of yourself."  (Id. at 4.)

Plaintiff alleges that defendant Smith approved defendant Soltanian-Zadeh's decision to discontinue plaintiff's pain medication when he signed plaintiff's grievance.  (Id. at 3.)

Plaintiff alleges that he was moved to a different yard (E Yard) and assigned defendant Vaughn as his new Primary Care Physician ("PCP").  (Id. at 4.)  Plaintiff alleges that at his previous yard, i.e., MCSP C-yard, plaintiff purchased an orthopedic mattress with his own money.  (Id.)  Plaintiff alleges that when he transferred to E yard, plaintiff was not allowed to have his orthopedic mattress.  (Id. at 4-5.)  Plaintiff alleges that the mattress is being held in Receiving and Release ("R & R").  (Id. at 5.)  Plaintiff alleges that correctional officers told him that he needed a chrono from his PCP in order to receive the mattress.  (Id.)  Plaintiff alleges that defendant Vaughn repeatedly denied his requests for a chrono to receive his mattress.  (Id.)

Plaintiff alleges that, in a separate appeal, defendant Smith approved defendant Vaughn's decision to replace plaintiff's methadone with Tylenol and defendant Vaughn's decision not to re-new his chrono for the orthopedic mattress.  (Id.)

The undersigned finds that plaintiff's second amended complaint raises the following claims.  Plaintiff alleges that defendants Soltanian-Zadeh, Smith and Vaughn violated the Eighth Amendment by discontinuing plaintiff's methadone.  Plaintiff alleges that defendants Smith and Vaughn violated the Eighth Amendment by denying plaintiff's request for a chrono authorizing plaintiff to have his orthopedic mattress in his cell.

////

////

4

IV.     Motion to Dismiss by Defendants Vaughn and Smith (ECF No. 80)

A.     Is Plaintiff's Eighth Amendment Claim Alleging that Defendant Smith Approved Defendant Soltanian-Zadeh's Decision to Discontinue Pain Medication Barred by the Statute of Limitations?

*Legal Standards*

"A claim may be dismissed [for failing to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)). "However, Rule 12(b)(6) also permits consideration of any matters of which judicial notice may be taken, and any exhibits attached to the complaint." Guerra v. Janda, 2014 WL 4385689, at *9 (S.D. Cal. Jul. 22, 2014) (citing United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)).

Section 1983 does not contain its own limitations period.  The appropriate period is that of the forum state's statute of limitations for personal injury torts.  See Wilson v. Garcia, 471 U.S. 261, 276 (1985), superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 377-78 (2004); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at section 335.1 of the California Civil Procedure Code, and this is the applicable state statute in § 1983 actions.  Barrett v. Berry, 2020 WL 5816224, at *7 (N.D. Cal. Sept. 30, 2020).

California Civil Procedure Code section 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term of less than for life." Cal. Civ. Proc. Code § 352.1(a).  Id. at *7 n.4.  The tolling is not indefinite, however; the disability of imprisonment delays the accrual of the cause of action for a maximum of two years.  Id., citing Cal. Civ. Proc. Code § 352.1(a).

The statute of limitations is tolled for the time it takes for a prisoner to administratively exhaust his underlying grievances.  See Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005)

5

1   ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory

2   exhaustion process").

3   *Discussion*

4   In the motion to dismiss, defendants first argue that because plaintiff is serving a sentence

5   of life without the possibility of parole, plaintiff is not entitled to tolling pursuant to California

6   Civil Procedure Code § 352.1.  In support of this argument, defendants request that the court take

7   judicial notice of plaintiff's abstract of judgment.  (ECF No. 80-2 at 109-10.)  The undersigned

8   takes judicial notice of plaintiff's abstract of judgment.  Lee v. City of Los Angeles, 250 F.3d

9   668, 689 (9th Cir. 2001), overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307

10  F.3d 1119 (9th Cir. 2002) (the court may take judicial notice of facts that are not subject to

11  reasonable dispute); Fed. R. Evid. 201(b)(2).

12  Plaintiff's abstract of judgment reflects that plaintiff was sentenced to life with the

13  possibility of parole, and not life without the possibility of parole.  (ECF No. 80-2 at 109.)  An

14  inmate serving a term of life with the possibility of parole is entitled to tolling pursuant to

15  § 352.1.  Brown v. County of Los Angeles, 830 Fed.Appx. 231, 232-33 (9th Cir. 2020) (prisoners

16  serving sentences less than life without the possibility of parole are entitled to § 352.1 tolling).

17  Therefore, plaintiff is entitled to tolling pursuant to § 352.1.  Thus, plaintiff had four years to

18  bring his § 1983 claim for damages, i.e., two years pursuant to § 335.1, plus two years pursuant to

19  § 352.1.  Baros v. Ramirez, 2019 WL 3849171, at *6 (C.D. Cal. June 5, 2019).

20  Defendants next observe that plaintiff's complaint fails to allege any specific dates when

21  defendant Soltanian-Zadeh stopped plaintiff's pain prescriptions or the date of defendant Smith's

22  response to plaintiff's grievance approving this decision.  Defendants argue that plaintiff's

23  complaint incorporates by reference grievance MCSP-HC-14045841, on which his claims against

24  defendant Smith are based.[2]  Defendants argue that plaintiff had two years from the May 28, 2015

---

25  [2]  Under the incorporation by reference doctrine, the court may consider documents "whose

26  contents are alleged in a complaint and whose authenticity no party questions, but which are not
    physically attached to the pleading."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994),

27  overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119, 1121 (9th Cir.
    2002).  The court may treat such a document as "part of the complaint, and thus may assume that

28  its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  United States v.

1   Director's Level Decision in grievance MCSP-HC-14045841 to file a timely civil rights action.

2   (See ECF No. 80-5 at 5.)  Defendants argue that the instant action is not timely because plaintiff

3   filed his original complaint more than two years after May 28, 2018.

4          As discussed above, plaintiff is entitled to four years of tolling, rather than two years as

5   argued by defendants in the motion to dismiss.  Pursuant to the mailbox rule, plaintiff filed this

6   action on April 26, 2018.  (ECF No. 1 at 5.)  Assuming without deciding that grievance MCSP-

7   HC-14045841 may be incorporated by reference, plaintiff filed this action within four years of

8   May 28, 2015.

9          In a footnote, defendants contend that grievance MCSP-HC-13043952, attached to the

10  Director's Level Decision of grievance MCSP-HC-14045841 "arguably" exhausted plaintiff's

11  claims against defendants Soltanian-Zadeh and Smith concerning the reduction or cancellation of

12  plaintiff's methadone.  (ECF No. 80-1 at 6 n.4.)  Defendants contend that the Director's Level

13  Decision for grievance MCSP-HC-13043952 was issued March 13, 2014, over four years before

14  plaintiff filed his complaint.  (Id.)

15         While the Director's Level Decision in grievance MCSP-HC-13043952 may be attached

16  to the Director's Level Decision for grievance MCSP-HC-14045841, defendants are now arguing

17  that two separate grievances exhausted plaintiff's claims.  In making this argument, defendants

18  essentially argue that both grievances are incorporated by reference.  It is not clear to the

19  undersigned that plaintiff's amended complaint specifically refers to both of these grievances.

20  For this reason, and because defendants' argument regarding grievance MCSP-HC-13043952 is

21  not clearly raised, the undersigned recommends that defendants' motion to dismiss the at-issue

22  claim against defendant Smith as barred by the statute of limitations based on grievance MCSP-

23  HC-13043952 be denied.[3]

24         Accordingly, for the reasons discussed above, the undersigned recommends that

25  defendants' motion to dismiss the at-issue claim against defendant Smith as barred by the statute

26  _____

    Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

27
    [3]  Defendants' argument regarding grievance MCSP-HC-13043952 is more appropriately raised
28  in a summary judgment motion.

1    of limitations be denied.

2        B. <u>Did Plaintiff Fail to State a Potentially Colorable Eighth Amendment Claim Against</u>

3            <u>Defendant Smith Based Upon his Supervisory Approval of Defendant Vaughn's</u>

4            <u>Discontinuation of Methadone and Denial of a Mattress Chrono?</u>

5        As discussed above, plaintiff alleges that defendant Smith violated the Eighth Amendment

6    when, in a separate appeal, he approved defendant Vaughn's decisions to discontinue plaintiff's

7    methadone and to deny plaintiff's mattress chrono.  Defendants argue that by relying on

8    defendant Smith's supervisory role, rather than any specific action, plaintiff fails to state a claim

9    upon which relief may be granted.

10       Citing <u>Iqbal</u>, 566 U.S. at 675-76, defendants argue that there is no vicarious liability for

11   supervisors in § 1983 lawsuits.  Defendants argue that a supervisor, like any other official, may be

12   found liable for only his own unconstitutional conduct.  Citing <u>Peralta v. Dillard</u>, 744 F.3d 1076,

13   1086-87 (9th Cir. 2014), defendants argue that the requisite knowledge for deliberate indifference

14   is lacking, for instance, when a supervisor merely denies an inmate's second-level grievance

15   concerning medical care, where the supervisor did not participate in the inmate's treatment,

16   interview the inmate, or independently review the inmate's records.[4]

17   ////

18

19   [4] In <u>Peralta</u>, the plaintiff alleged inadequate dental care.  In relevant part, the Ninth Circuit

20   considered whether the district court erred in granting directed verdicts to supervisory defendant
     Chief Medical Officer Fitter.  <u>Id.</u> at 1081.  The Ninth Circuit found that defendant Fitter's
     signature on plaintiff's administrative appeal did not mean he knew about plaintiff's complaints.

21   <u>Id.</u> at 1086.  The Ninth Circuit found that although defendant Fitter supervised the dental

22   department, he was not a dentist and did not independently review the plaintiff's claims or read
     his chart before signing off on the grievance.  <u>Id.</u>  Instead, defendant Fitter relied on the medical

23   opinions of the staff dentists who had investigated plaintiff's complaints and already signed off
     on the treatment plan.  <u>Id.</u>  The Ninth Circuit noted that defendant Fitter understood his role to be

24   largely administrative, not second-guessing staff dentists' judgments.  <u>Id.</u>  Based on this evidence,
     the Ninth Circuit found that the district court properly entered a directed verdict as to defendant

25   Fitter.  The instant case can be distinguished from <u>Peralta</u> in that the undersigned is considering a
     motion to dismiss, rather than evidence presented at a trial.  In addition, plaintiff alleges that

26   defendant Smith, a medical doctor, approved a decision made by another medical doctor,
     defendant Vaughn.  Thus, it appears that defendant Smith's role in reviewing plaintiff's grievance

27   was more than merely administrative.  The issue of defendant Smith's role in the review of
     plaintiff's grievance is better addressed in a summary judgment motion.

28

1    District courts are divided on whether a medically trained supervisor who learns about

2    alleged unconstitutional behavior from a prisoner's grievance and fails to intervene is personally

3    involved in the constitutional violation.  Nicholson v. Finander, 2014 WL 1407828, *7 (C.D. Cal.

4    April 11, 2014).  Some district courts have reasoned that no constitutional claim of any sort may

5    be based upon the administrative appeals process.  Id. (cases cited therein).  Other cases have held

6    that a grievance appeal reviewer who fails to remedy a denial of adequate medical care personally

7    participates in the alleged deprivation.  Id. (cases cited therein).

8    The undersigned agrees with the cases holding that a medically trained supervisor who

9    learns about an unconstitutional denial of adequate medical care from a prisoner's grievance and

10   fails to intervene may be found to have personally participated in the Eighth Amendment

11   violations.  For this reason, the undersigned finds that plaintiff's at-issue claims against defendant

12   Smith, whom plaintiff identifies as a medical doctor, are potentially colorable.  Accordingly,

13   defendants' motion to dismiss these claims against defendant Smith on the grounds discussed

14   above should be denied.

15   C.   Did Plaintiff Plead Sufficient Facts in Support of His Claims Alleging that Defendants

16        Smith and Vaughn Acted with Deliberate Indifference When Replacing Plaintiff's

17        Pain Medication with Tylenol and Deciding Not to Renew the Mattress Chrono?

18   *Legal Standard*

19   Deliberate indifference to serious medical needs violates the Eighth Amendment's

20   proscription against cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976);

21   McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX

22   Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of a

23   "deliberate indifference" claim involves an examination of two elements:  the seriousness of the

24   prisoner's medical need and the nature of the defendant's response to that need.  Id. at 1059.

25   A serious medical need exists if the failure to treat a prisoner's condition could result in

26   further significant injury or the "unnecessary and wanton infliction of pain."  Id.  The existence of

27   an injury that a reasonable doctor or patient would find important and worthy of comment or

28   treatment, the presence of a medical condition that significantly affects an individual's daily

1   activities, or the existence of chronic and substantial pain are examples of indications that a

2   prisoner has a serious need for medical treatment.  Id. at 1059-60.

3        A prison official is deliberately indifferent if he or she knows that a prisoner faces a

4   substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate

5   it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

6   facts from which the inference could be drawn that a substantial risk of serious harm exists," but

7   "must also draw the inference."  Id.  If a prison official should have been aware of the risk, but

8   did not actually know, the official has not violated the Eighth Amendment, no matter how severe

9   the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002), overruled on other

10  grounds by Castro v. Cty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016).

11       "Typically, a difference of opinion between a physician and the prisoner — or between

12  medical professionals—concerning what medical care is appropriate does not amount to

13  deliberate indifference."  Edmo v. Corizon, Inc., 935 F.3d 757, 786 (9th Cir. 2019) (citations,

14  quotations and brackets omitted).  "But that is true only if the dueling opinions are medically

15  acceptable under the circumstances."  Id. (citation omitted).

16       *Discussion—Alleged Denial of Pain Medication*

17        Defendants move to dismiss plaintiff's claim that that they violated the Eighth

18  Amendment by discontinuing plaintiff's methadone on the grounds that they did not act with

19  deliberate indifference.  Defendants argue plaintiff failed to plead facts showing that the decision

20  to replace methadone with Tylenol was "medically unacceptable."  Defendants argue that one

21  type of pain medication was simply replaced with another and that plaintiff offers no details

22  concerning his physical reaction to these different courses of treatment.

23       In the second amended complaint, plaintiff alleges that defendants discontinued

24  methadone, which had been prescribed at "previous prisons" and effectively treated his severe

25  pain, and substituted it with Tylenol, which did not treat his pain.  Based on these allegations, the

26  undersigned cannot find that the decision to discontinue methadone was medically acceptable.

27  See Edmo v. Corizon, Inc., 935 F.3d at 793 (continuation with "ineffective treatment plan"

28  constituted deliberate indifference); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989)

1   (reversing grant of summary judgment for prison officials who allegedly were aware that the loss

2   of plaintiff's dentures was causing him severe pain, bleeding gums and inability to eat properly,

3   yet failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures

4   could be fitted); McElligott v. Foley, 182 F.3d 1248, 1257–58 (11th Cir. 1999) (summary

5   judgment inappropriate under Eighth Amendment standards, where jail doctor prescribed only

6   ineffective medication for inmate's increasingly severe symptoms of severe stomach pain and

7   cramps, vomiting and inability to eat); Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir. 1994) ("A

8   jury could infer deliberate indifference from the fact that [the defendant medical provider] knew

9   the extent of [plaintiff's] pain, knew that the course of treatment was largely ineffective, and

10  declined to do anything more to attempt to improve [plaintiff's] situation.") (quoted with approval

11  in Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); quotations omitted); Fellows v. Baca, 2013

12  WL 12238537, at *11 (C.D. Cal. June 27, 2013), adopted, 2013 WL 12238844 (C.D. Cal. Aug.

13  14, 2013) (under Eighth Amendment standards, continuing to prescribe only largely ineffective

14  pain medication for inmate's "persisting complaints" of abdominal pain could show deliberate

15  indifference to inmate's kidney stones); Chess v. Dovey, 2011 WL 567375, at *21 (E.D. Cal. Feb.

16  15, 2011), adopted, 2011 WL 1219268, E.D. Cal., Mar. 30, 2011) (denying summary judgment

17  on Eighth Amendment claim where doctor "ignored plaintiff's complaint about the ineffective

18  nature of the Tylenol, aspirin and other medications he was being given and the pain being

19  suffered as a result.").

20       In support of the motion to dismiss, defendants cite three district court cases granting

21  motions to dismiss where the plaintiffs alleged inadequate pain medication.  As discussed herein,

22  the operative complaints in these cases apparently contained information regarding the

23  defendants' decisions to change the pain medication.  Based on this information, the district

24  courts were able to conclude that the defendants did not act with deliberate indifference.  The

25  undersigned discusses these cases herein.

26       In Mize v. Kiernan, 2017 WL 3141266 (E.D. Cal. July 24, 2016), adopted September 5,

27  2017, the district court granted defendants' motion to dismiss plaintiff's Eighth Amendment

28  claim alleging inadequate pain medication.  In Mize, the court found that the defendants did not

11

act with deliberate indifference in denying the plaintiff's request for narcotic pain medication because this treatment, which differed from that of his prior physicians, reflected a difference of opinion as to one course of treatment over another.  2017 WL 3141266, at *3.  In addition, the Pain Management Committee's conclusion that narcotics were not clinically indicated for plaintiff demonstrated that defendants' treatment was not medically unacceptable.  Id.  The court also noted that defendants both declined to prescribe narcotics pending additional information from an orthopedist and a physical therapist.  Id.  The record reflected that both defendants fully examined plaintiff, ordered alternative therapies, and provided non-prescription analgesic medication to treat plaintiff's chronic conditions.  Id.

In Murray v. Warden, 2020 WL 4339450 (E.D. Cal. July 28, 2020), the plaintiff alleged that he suffered from inoperable brain cancer that caused him to suffer inoperable headaches. 2020 WL 4339450, at *2.  The plaintiff had previously been prescribed morphine to manage the pain.  Id.  The physician treating plaintiff before defendant Aung had discontinued morphine.  Id. When plaintiff saw defendant Aung, defendant prescribed Tylenol 3 and then halved the dosage, which caused plaintiff significant head pains.  Id.  Defendant Aung then referred plaintiff to a neurologist who labeled him a drug seeker and recommended plaintiff be prescribed amitriptyline, which is an antidepressant.  Id.  Plaintiff requested that he be re-prescribed morphine, as recommended by his neurosurgeon.  Id.

In dismissing the case at screening, the court found that plaintiff had failed to allege facts showing that defendant Aung was deliberately indifferent to his serious medical needs.  Id. at 3. The court found that plaintiff had not alleged that defendant Aung completely discontinued his pain medication.  Id.  Plaintiff alleged that it was a previous physician who discontinued pain medication altogether, and that defendant Aung reinstated a pain medication other than morphine, referred plaintiff to a specialist, who recommended another non-narcotic option for pain management.  Id.  The court found that plaintiff had alleged a difference of opinion between himself and his physician, and between physicians, as to the appropriate method of pain management.  Id.

////

1    In Joseph v. Clayton, 2020 WL 804863 (S.D. Cal. Feb. 18, 2020), the plaintiff alleged that

2    he suffered from cirrhosis of the liver which caused him to suffer severe pain and discomfort.

3    2020 WL 804863, at *2.  Plaintiff alleged that a neurologist told defendant Clayton to "put

4    [plaintiff] on pain management."  Id.  Plaintiff alleges that by putting plaintiff on "pain

5    management," defendant Clayton tried to cut off his pain medication and "played games" with his

6    Tramadol.  Id.  Plaintiff also claimed that defendant Clayton falsely reported that plaintiff

7    "refused to test" and wrongly labeled plaintiff a drug abuser.  Id.  Plaintiff attached to his

8    complaint a medical record which contained a referral to a "PCP" for "pain mgnt."  Id. at 3.

9    Plaintiff also attached a "Chronic Pain Intake Sheet," listing, among other things, plaintiff's

10   medications.  Id.

11        The district court granted defendant Clayton's motion to dismiss, finding that,

12           Without "further factual enhancement" which plausibly suggests
13           Clayton modified Joseph's pain management plan to reduce his
             tramadol dependence knowing that it would cause a serious and
14           medically unacceptable risk of harm to him, Joseph's Complaint fails
             to plead the deliberate indifference necessary to sustain a plausible
15           claim for relief. Id.; see also Toguchi, 391 F.3d at 1058 (finding
             claims that "Seroquel is superior to Triafon, and therefore should not
16           have been discontinued" insufficient to support showing of
             "deliberate indifference"); see also DeGeorge v. Mindoro, 2019 WL
17           2123590, at *7 (N.D. Cal. May 15, 2019) (finding prison doctor's
             decision "to wean plaintiff off morphine" was not "medically
18           unacceptable" in light of other "reasonable steps [taken] to abate
             plaintiff's pain" and finding no deliberate indifference despite
19           plaintiff's claims that only morphine was "very effective" in treating
             his lower back pain).

20

21   Id. at 6.

22        In the three cases cited above, the complaints contained allegations or evidence based on

23   which the courts could find that defendants did not act with deliberate indifference with respect to

24   their decisions regarding pain medication.  In Murray and Mize, the records contained evidence

25   that the defendant doctors relied on the opinions of specialists in their decisions to alter the

26   plaintiffs' pain medications.  In other words, the records in these cases contained evidence from

27   which the courts could conclude that the decisions to alter the pain medications were medically

28   acceptable.  In Joseph v. Clayton, the record apparently contained evidence that the defendants

13

1    were reasonably attempting to wean plaintiff off Tramadol.

2           In contrast, plaintiff in the instant case alleges that defendants Vaughn and Smith

3    discontinued his previously prescribed methadone, which effectively treated his pain, and

4    substituted it with Tylenol, which did not effectively treat his pain.  Plaintiff does not allege that

5    defendants relied on specialists in making their decisions or that they had other valid reasons to

6    alter plaintiff's previously effective pain medication.  For these reasons, the undersigned finds

7    that at this stage of the litigation the instant case is distinguishable from the three cases discussed

8    above.[5]

9           In their reply to plaintiff's opposition, defendants contend that plaintiff attaches medical

10   records to his opposition that undermine his claims against defendants Smith and Vaughn.

11   Defendants contend that plaintiff attaches medical records indicating that his pain prescription for

12   methadone from another institution was discontinued and replaced in 2013 with a combination of

13   Tylenol # 3 and Cymbalta.  (ECF No. 88 at 5 n.3 (citing ECF No. 86 at 18, 25, 31).)  Defendants

14   argue that none of the exhibits attached to the opposition mention defendant Smith, and defendant

15   Vaughn is mentioned just once for a follow-up ophthalmology appointment on December 15,

16   2017.  (Id., citing ECF No. 86 at 51.)  The undersigned cannot consider the exhibits attached to

17   plaintiff's opposition in resolving the pending motion to dismiss.  Outdoor Media Group, Inc. v.

18   City of Beaumont, 506 F.3d at 899 (in ruling on a motion to dismiss filed pursuant to Rule

19   12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits

20   attached to the complaint, and matters properly subject to judicial notice.").  Defendants may

21   address these exhibits in a summary judgment motion.

22           For the reasons discussed above, defendants' motion to dismiss plaintiff's claims against

23   defendants Smith and Vaughn for failing to allege sufficient facts demonstrating deliberate

24   indifference should be denied.

25   ////

26   _____

27   [5] Citing Estelle v. Gamble, 429 U.S. at 105, plaintiff alleges that a prison doctor cannot
     intentionally interfere with treatment once prescribed by a specialist.  (ECF No. 17 at 4.)  These
     allegations suggest that a specialist, possibly Ahmed, previously prescribed opioid medication for
28   plaintiff and defendants, who apparently are not specialists, discontinued this medication.

*Alleged Denial of Mattress Chrono*

In the motion to dismiss, defendants argue that while plaintiff emphasizes that prison officials at other institutions approved his mattress chrono, defendants cannot be deemed deliberately indifferent because their opinions differed from other prison medical personnel. Defendants also argue that this decision did not implicate any serious medical need of plaintiff. Defendants argue that instead of plaintiff sleeping on his privately purchased orthopedic mattress, plaintiff slept on a standard issue custody mattress.  Defendants argue that plaintiff does not explain how any of his alleged medical ailments required sleeping on an orthopedic mattress, and nor does plaintiff allege any specific injury or harm resulting from use of a standard mattress.

Defendants also argue that, as alluded to in the second amended complaint, California Code of Regulations, title 15, § 3999.394(b) expressly exempts, "[b]edding including standard-issued custody mattresses" as a medically necessary accommodation and further prohibits health care staff from ordering them.  Defendants argue that given the regulation contained in § 3999.394(b), defendants' decision not to renew plaintiff's mattress chrono was not "medically unacceptable."  Defendants argue that the decision not to renew plaintiff's mattress chrono comports with CDCR policy against designating mattresses as medically necessary.

The undersigned sets forth in more detail plaintiff's claims regarding the alleged denial of the mattress chrono.  In the second amended complaint, plaintiff alleges that while housed at his previous yard, i.e., MCSP C-yard, he purchased an orthopedic mattress with his own money. (ECF No. 17 at 4.)  Plaintiff later transferred to MCSP E-yard.  (Id.)  Plaintiff alleges that on E-yard, "medical is not to provide any extra mattresses to any inmates no matter how much pain an inmate is in," so plaintiff is denied his two "personally purchased" orthopedic mattresses.  (Id. at 5.)  Plaintiff alleges that the correctional officers in Receiving and Release, where his mattresses are stored, told him that he needed a chrono from his new PCP, defendant Vaughn, to receive his mattresses.  (Id.)  Defendant Vaughn allegedly denied plaintiff's request for a chrono to receive these mattresses.  (Id.)  Plaintiff alleges that he has chronos going back as far as June 12, 2009, which "means that every other prison yard have always provided plaintiff with his medical necessity except this new yard."  (Id.)

15

1    Turning to defendants' arguments, while § 3999.394(b) states that bedding is not

2    considered a medically necessary accommodation, and shall not be ordered by health care staff, it

3    appears that this regulation applies to state-issued mattresses.  However, plaintiff allegedly

4    purchased the orthopedic mattresses himself and was permitted to have the mattresses in his cell

5    while housed in the MCSP C-yard.  Based on these circumstances, without further explanation

6    the undersigned cannot determine the relevancy of § 3999.394(b) to orthopedic mattresses

7    purchased by inmates.[6]

8    Defendants argue that their decision to discontinue plaintiff's mattress chrono amounts to

9    a difference of opinion with the prison personnel who previously approved plaintiff's mattress

10   chrono.  However, plaintiff alleges that every prison approved his request for a mattress chrono

11   going back as far as June 2, 2009.  Based on these allegations, the undersigned cannot determine

12   whether the decision by defendants Smith and Vaughn to deny plaintiff's mattress chrono was

13   medically acceptable.

14   Defendants suggest that plaintiff has not alleged a serious medical need requiring his use

15   of an orthopedic mattress.  In the opposition, plaintiff alleges that his orthopedic mattresses were

16   required due to degenerative joint disc disease and hip replacement.  (ECF No. 86 at 4-5.)  In the

17   second amended complaint, plaintiff alleges that he suffers from a variety of conditions including

18   "post right total hip replacement."  (ECF No. 17 at 3.)  Based on plaintiff's description of his

19   ailments, and plaintiff's claim that personnel at other prisons permitted plaintiff to have the

20   orthopedic mattresses in his cell for several years, the undersigned finds that plaintiff has pled

21   sufficient facts demonstrating that he had a serious medical need that required use of an

22   orthopedic mattresses.

23   For the reasons discussed above, defendants' motion to dismiss plaintiff's claim regarding

24   the denial of his request for a chrono for his orthopedic mattresses should be denied.

25   ////

26

_____

27   [6]  Defendants may be arguing that orthopedic mattresses are not medically necessary per se
     pursuant to 3999.394(b).  However, the undersigned requires further information in order to
28   evaluate this argument.

1        V.        Defendant Soltanian-Zadeh's Motion to Dismiss

2            A.    Exhaustion of Administrative Remedies

3        Defendant Soltanian-Zadeh first moves to dismiss plaintiff's claims on the grounds that

4    plaintiff failed to exhaust administrative remedies.  (ECF No. 79-1 at 3-5.)  Defendant argues that

5    there is no evidence on the face of the complaint if or when plaintiff exhausted his health care

6    claims against defendant Soltanian-Zadeh.  (Id. at 5.)

7        Under the Prison Litigation Reform Act (PLRA), a prisoner must fully exhaust all

8    available administrative remedies before bringing an action under § 1983.  42 U.S.C. § 1997e(a);

9    Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all

10   prisoners seeking redress for prison circumstances or occurrences").

11       While exhaustion is a mandatory requirement that will result in dismissal if not met, Ross

12   v. Blake, 136 S. Ct. 1850, 1856 (2016), "inmates are not required to specially plead or

13   demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).  Instead,

14   "the defendant in a PLRA case must plead and prove nonexhaustion as an affirmative defense,"

15   and it is the defendant's burden "to prove that there was an available administrative remedy, and

16   that the prisoner did not exhaust that available remedy."  Albino v. Baca, 747 F.3d 1162, 1172

17   (9th Cir. 2014) (en banc) (citations omitted).  "In the rare event that a failure to exhaust is clear on

18   the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Id. at 1166.

19       It is not clear on the face of plaintiff's second amended complaint that plaintiff failed to

20   exhaust administrative remedies as to his claims against defendant Soltanian-Zadeh.

21   Accordingly, defendant Soltanian-Zadeh's motion to dismiss on these grounds should be denied.

22           B.    Failure to State a Claim

23     In the motion to dismiss, defendant Soltanian-Zadeh contends that it is not clear if plaintiff is

24   alleging that defendant improperly stopped or reduced his pain medication and/or also improperly

25   stopped or reduced plaintiff's mesalamine.[7]  The undersigned clarifies that plaintiff is proceeding

26   on a claim that defendant Soltanian-Zadeh violated plaintiff's Eighth Amendment right to

27   _____

28   [7]  In the motion to dismiss, defendant identifies mesalamine as a drug used to treat and prevent
     mild to moderately active ulcerative colitis.  (ECF No. 78-1 at 4 n.2.)

1  adequate medical care by stopping or reducing plaintiff's pain medication, i.e., methadone.

2         Defendant Soltanian-Zadeh first argues that plaintiff's allegations do not state a

3  potentially colorable Eighth Amendment claim because plaintiff does not allege sufficient facts

4  demonstrating the objective prong of the deliberate indifference standard.  Defendant Soltanian-

5  Zadeh argues that plaintiff does not allege a sufficiently serious deprivation to constitute cruel

6  and unusual punishment because plaintiff does not allege the dates when the pain medication

7  started or ended.  Defendant argues that plaintiff fails to indicate any symptom or condition which

8  were treated with the pain medication.  Defendant also argues that plaintiff does not allege why

9  opioid medication was prescribed.

10         As discussed above, in the second amended complaint plaintiff describes nine medical

11  conditions plaintiff suffered from.  (ECF No. 17 at 2-3.)  While it is fairly clear that plaintiff was

12  not prescribed methadone for all of these conditions, it is reasonable to infer that plaintiff was

13  prescribed methadone for some of these conditions.  Plaintiff also alleges that defendant

14  Soltanian-Zadeh stopped his methadone prescription upon his arrival at MCSP.  (Id. at 3.)  Based

15  on these allegations, and plaintiff's claim that his severe pain continued after the discontinuation

16  of methadone, the undersigned finds that plaintiff pled sufficient facts in support of the objective

17  element of the deliberate indifference standard.

18         Defendant Soltanian-Zadeh next argues that plaintiff has not pled sufficient facts

19  supporting the subjective element of the deliberate indifference standard.  Defendant Soltanian-

20  Zadeh argues that defendants Vaughn and Smith also agreed that plaintiff's opioid prescription

21  should be discontinued.  Based on these allegations, defendant argues that defendant Soltanian-

22  Zadeh could not have subjectively known of an excessive risk to plaintiff's health when all other

23  physicians mentioned were either in agreement with defendant Soltanian-Zadeh's treatment or not

24  conspiuously opposed to his decision.

25  ////

26  ////

27  ////

28  ////

1    In the second amended complaint plaintiff alleges,

2    
3    > Plaintiff's severe pain has been constant and had been alleviated by specific pain medications at previous prisons, but upon entering MCSP, plaintiff's pain medications were stopped; plaintiff's conditions that cause him pain had not changed so the pain still existed; Dr. Soltanian cannot assume that his patient has no pain…
4    

5    (Id. at 3.)

6    Plaintiff also alleges that defendant Soltanian-Zadeh told plaintiff, "CDCR is not

7    responsible to treat you for anything except to allow you to eat, shit and take care of yourself,"

8    when he discontinued plaintiff's methadone.  (Id. at 4.)

9    While defendants Smith and Vaughn apparently later agreed with defendant Soltanian-

10   Zadeh's decision to discontinue plaintiff's methadone, plaintiff alleges that the previously

11   prescribed methadone effectively treated his severe pain.  Plaintiff alleges that he suffered pain

12   after defendants discontinued his methadone.  Based on these allegations, the undersigned cannot

13   find that the decision to discontinue plaintiff's methadone was medically acceptable.   Edmo v.

14   Corizon, Inc., 935 F.3d at 786 (difference of opinion between medical professionals does not

15   amount to deliberate indifference if the dueling opinions are medically acceptable under the

16   circumstances).

17   Accordingly, for the reasons discussed above, the undersigned recommends that defendant

18   Soltanian-Zadeh's motion to dismiss on the grounds that plaintiff has not pled sufficient facts to

19   state an Eighth Amendment claim be denied.

20   VI.   Remaining Matters

21        *Plaintiff's Request for Subpoenas (ECF No. 78)*

22   Plaintiff requests that the court issue a subpoena to defendants for the production of

23   various documents.

24   Federal Rules of Civil Procedure 45(a)(D) provides that parties to a case may obtain

25   discovery from non-parties through a subpoena.  Rule 45(a)(D) does not apply to discovery from

26   a party.  See Lee v. Multnomah County Mental Health Department in County Detention Center,

27   2018 WL 5848971, at *1 (D. Ore. Nov. 7, 2018) (citing Wirtz v. Local Union 169, Intern. Hod

28   Carriers' Bldg. and Common Laborers' Union of America, AFL-CIO, 37 F.R.D. 349, 351 (D.

Nev. 1965) (subpoena duces tecum is not intended as substitute for request to produce where subpoena requires production of documents under control of party as distinguished from independent witness).

Plaintiff's motion for subpoenas is denied as it improperly seeks documents from defendants.

*Plaintiff's Summary Judgment Motion (ECF No. 87)*

Plaintiff moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to his claims against defendants Soltanian-Zadeh, Smith and Vaughn.

All defendants oppose plaintiff's summary judgment motion on the grounds that it is premature. (ECF Nos. 90, 91.) The undersigned agrees. "Although Rule 56 allows a party to file a motion for summary judgment 'at any time,' the rule also allows the court, as is just, to deny the motion or order a continuance for the opposing party to pursue discovery." Gordon v. Marquez, 2019 WL 1017323, at *1 (E.D. Cal. March 4, 2019). In the instant case, defendants have not answered plaintiff's second amended complaint, the claims on which this action proceeds are not yet settled and no discovery order has been issued. Accordingly, plaintiff's motion for summary judgment should be denied as premature. See also Williams v. Yuan Chen, 2011 WL 4354533, at *3 (E.D. Cal. Sept. 16, 2011) (denying plaintiff's summary judgment motion as premature where defendant had not filed an answer and the court had not issued a discovery order).

*Motion to Strike Surreply (ECF No. 96)*

Defendant Soltanian-Zadeh moves to strike plaintiff's surreply to defendant's motion to dismiss. For the reasons stated herein, the motion to strike is granted.

Defendant Soltanian-Zadeh filed a motion to dismiss. (ECF No. 79.) Plaintiff filed an opposition to defendant Soltanian-Zadeh's motion to dismiss. (ECF No. 85.) Defendant Soltanian-Zadeh filed a reply to plaintiff's opposition. (ECF No. 89.)

Plaintiff then filed a document titled "Plaintiff's Shockner's Reply to Defendant Motions to Dismiss Second Amended Complaint and Opposition to Motion for Summary Judgment." (ECF No. 95.) This document appears to address arguments raised in defendant Soltanian-Zadeh's motion to dismiss. Defendant Soltanian-Zadeh moves to strike this document as an

1   improper surreply.

2        Neither the Federal Rules of Civil Procedure, nor the Local Rules for the Eastern District

3   of California permit the filing of a surreply as a matter of right.  See Garcia v. Biter, 195

4   F.Supp.3d 1131, 1133-34 (E.D. Ca. July 18, 2016) (noting the plaintiff did not have a right to file

5   a surreply under the local rules or under the Federal Rules of Civil Procedure).  However, district

6   courts have discretion to permit, or preclude, a surreply.  Id. at 1133 (other citations omitted).

7   While courts are required to provide pro se litigants leniency, the court generally views motions

8   for leave to file a surreply with disfavor and will not consider granting a motion seeking leave to

9   file a surreply absent good cause shown.  Id. (other citations omitted).

10        Plaintiff did not seek leave to file a surreply and nor has plaintiff shown good cause to file

11   a surreply.  Accordingly, defendant's motion to strike plaintiff's surreply is granted.

12        Accordingly, IT IS HEREBY ORDERED that:

13        1.  Plaintiff's motion for subpoenas (ECF No. 78) is denied;

14        2.  Defendant Soltanian-Zadeh's motion to strike plaintiff's surreply (ECF No. 96) is

15           granted;

16        IT IS HEREBY RECOMMENDED that:

17        1.  Defendant Soltanian-Zadeh's motion to dismiss (ECF No. 79) be denied;

18        2.  The motion to dismiss filed by defendants Smith and Vaughn (ECF No. 80) be denied;

19        3.  Plaintiff's summary judgment motion (ECF No. 87) be denied.

20        These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

22   after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

25   objections shall be filed and served within fourteen days after service of the objections.  The

26   ////

27   ////

28   ////

1   parties are advised that failure to file objections within the specified time may waive the right to

2   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  July 27, 2021

4

5   KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

6

7

8   Shock1948.mtd(5)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28